David N. Lake, State Bar No. 180775
david@lakelawpc.com
**LAW OFFICES OF DAVID N. LAKE,**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990

Attorneys for Defendants
JULIE HILLMAN SOLURSH and ALAN SOLURSH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON HILLMAN, an individual, | CASE NO. 2:24-cv-09026-HDV(JDx) |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| LORI HILLMAN POLACHEK, an individual and co-trustee of The Hillman Family Revocable Trust; JULIE HILLMAN SOLURSH, an individual and co-trustee of The Hillman Family Revocable Trust; ALAN SOLURSH, an individual; and DOES 1 through 20, inclusive, | [*Request for Judicial Notice Filed Concurrently Herewith*]<br><br>Complaint Filed: October 8, 2024<br>Action Removed: October 18, 2024 |
| Defendants. | Date: April 3, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 5B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 3, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Hernan D. Vera, First Street Courthouse, 350 W. First Street, Courtroom 5D, 8th Floor, Los Angeles, CA 90012, Defendants Julie Hillman Solursh and Alan Solursh (collectively, "Defendants") will, and hereby do, move for an order dismissing in its entirety the Complaint filed by Plaintiff Ron Hillman ("Plaintiff"). Defendants make the Motion pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has neither stated a claim on which relief may be granted, nor stated allegations of fraud with the required specificity.

Defendants' motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities, Defendants' Request for Judicial Notice filed concurrently herewith, any reply Defendants may make, all other matters the Court may consider, and any argument or evidence that may be presented at the hearing on this Motion.

This motion is made following an attempt by moving party's counsel to conduct the required pre-motion conference pursuant to L.R. 7-3, but there was no response from Plaintiff's counsel to those efforts. Defendants' counsel wrote to Plaintiff's counsel on February 21, 2025 and detailed the bases for this motion and invited Plaintiff's counsel to contact Defense counsel to discuss the matter prior to March 3, 2025. There was no response to this message, so on February 28, 2025,

///
///
///

1  Defense counsel tried calling Plaintiff's counsel to discuss the motion and left a
2  voicemail message, but Plaintiff's counsel did not respond and has not responded
3  as of this filing.
4
5  DATED: March 3, 2025          LAW OFFICES OF DAVID N. LAKE
6
7                                         By: _____
8                                              DAVID N. LAKE
9                                         Attorneys for Defendants
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

I.    INTRODUCTION .................................................................. 4

II.   BACKGROUND ................................................................... 5

III.  ARGUMENT......................................................................... 8

   A. Applicable Law for Motions to Dismiss. ........................................................ 8

   B. Traditional Contractual Interpretation Principles Apply. ............................... 9

   C. The Entire Complaint is Barred Based on Plaintiff's Written Release. ........ 10

   D. Plaintiff Cannot Establish Reliance – Reasonable or Otherwise. ................ 12

   E. The Breach of Covenant of Good Faith Claim Fails. .................................. 14

   F. Plaintiff's Fraud Claim Fails......................................................................... 15

   G. Unjust Enrichment is Not a Recognized Cause of Action........................... 16

IV.  CONCLUSION ................................................................... 17

# Table of Authorities

**Cases**

*Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226 (1995) ........................... 12, 13

*Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 8

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ...................... 16

*Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471 (9th Cir. 1994) ..... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 9

*Benedek v. PLC Santa Monica,* 104 Cal.App.4th 1351 (2002) .............................. 10

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ...................................................... 10

*County of San Joaquin v. Workers' Comp. Appeals Bd.,* 117 Cal.App.4th 1180, (2004) ........................................................................................................................ 10

*Edwards v. Marin Park. Inc.,* 356 F.3d 1058 (9th Cir. 2004) ................................ 15

*Engage BDR v. GoDaddy,* 2021 WL 8820555 (C.D. Cal. 2021) ........................... 15

*Entropic Communications, LLC v. Comcast Corporation*, 702 F.Supp.3d 954 (C.D. Cal. 2023) ........................................................................................................ 12

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ..................... 10

*Griffin v. Green Tree Servicing, LLC,* 166 F. Supp. 3d 1030 (C.D. Cal. 2015) ..... 14

*In re Sagent Tech., Inc., Derivative Litig.,* 278 F.Supp.2d 1079 (N.D. Cal. 2003) 15

*In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F.Supp.2d 1145 (C.D. Cal.2010) .................................... 16

*Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) 14

*Jeff D. v. Andrus* 899 F.2d 753 (9th Cir. 1989) ........................................................ 9

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009) ..................................... 15

*Lesnik v. Eisenmann SE,* 374 F.Supp.3d 923 (N.D. Cal. 2019) ............................. 11

*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.,* 202 Cal.App.4th 1509 (2012) ................................................................................................................................. 10

*McVicar v. Goodman Global, Inc.,* 1 F.Supp.3d 1044 (C.D. Cal. 2014) ............... 16

*Miller v. Fairchild Indus.,* 797 F.2d 727 (9th Cir.1986) ............................................ 9

*Parsons v. Bristol Development Co.,* 62 Cal.2d 861 (1965) ..................................... 9

*Property California SCJLW One Corp. v. Leamy,* 25 Cal.App.5th 1155 (2018) .... 9

*R.C. v. Walgreen Co.,* 733 F.Supp.3d 876 (C.D. Cal. 2024) ................................... 16

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294 (Fed. Cir. 2009) ................................................................................................................................. 12

*S.M. ex rel. Allen v. W. Contra Costa Cty. Unified Sch. Dist. Fin. Corp.*, 2009 WL 1033826 (N.D. Cal. Apr. 16, 2009) ......................................................................... 10

*Sanford v. MemberWorks, Inc.,* 625 F.3d 550 (9th Cir. 2010) ................................ 15

*Schroeder v. Envoy Air, Inc.*, 2016 WL 11520388 (C.D. Cal. Sept. 27, 2016) ..... 11

*Solis v. Kirkwood Resort Co.,* 94 Cal.App.4th 354 (2001) ..................................... 10

*Tarvin v. Olly Public Benefit Corporation,* 2024 WL 4866271 (C.D. Cal., Nov. 12, 2024) ......................................................................................................................... 16

*United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.,* 660 F.Supp.2d 1163 (C.D. Cal. 2009) ............................................................................................... 12

*Villacres v. ABM Indus. Inc.,*189 Cal.App.4th 562 (2010) ..................................... 11

*Winet v. Price,* 4 Cal.App.4th 1159 (1992) ......................................................... 9, 11

**Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 8

Fed. R. Civ. P. 8 .......................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Ron Hillman ("Plaintiff") continues to try and undermine and undo his parents' knowing and informed estate planning decisions. Over time, that planning had reduced Plaintiff's share of his parents' estate which. That reduction was based on a formula clause and effectively limited Plaintiff's share to $1 Million, and offset therefrom all manner of expenses (paid to an interventionist, medical doctors, a mental health facility, and other medical, insurance, or living expenses) Plaintiff's mother paid to, for, or on behalf of Plaintiff during her lifetime.

After his mother's death on April 16, 2021 (as the remaining survivor), his sisters and now defendants Lori Hillman Polachek ("Lori") and Julie Hillman Solursh ("Julie"), became co-trustees of the Trust. Despite the clarity and plain enforceability of the changes which had been made to the Trust during his mother's lifetime (changes necessitated and brought about as a direct result of Plaintiff's long-term pattern of financially exploitive behavior), Plaintiff nevertheless disputed the amendments, including the aforementioned reductions to and adjustment of his share, and threatened to contest them all through legal action.

Plaintiff's threats led the parties to engage counsel and to see if a negotiated resolution could be reached. Plaintiff hired an attorney of his choosing, as did Lori and Julie. Eventually, through negotiations and serious, unnecessary, and generous concessions made by Lori and Julie in order to finally achieve peace, the parties entered into a written Settlement Agreement and Mutual Release which was executed on October 15, 2021, and effective as of October 12, 2021 (the

///

"Settlement Agreement").[1]  The Settlement Agreement substantially increased Plaintiff's share of the estate.[2]

In addition to increasing Plaintiff's share, the Settlement Agreement also includes express language and explicit clauses which are legally fatal to Plaintiff's claims – claims which are being pursued not just in contravention of his mother's wishes, and more importantly for this Court the terms and conditions of the Settlement Agreement, but frivolously and maliciously.  As detailed herein, all of Plaintiff's claims fail and should be dismissed by the Court without leave to amend.

## II.   BACKGROUND

On April 27, 1973, Stuart S. Hillman ("Stuart") and Marion F. Hillman ("Marion") as Settlors/Trustors and Trustees, created The Hillman Family Revocable Trust, which they amended and restated in its entirety on November 30, 2005, by the Second Amended and Restated Hillman Family Revocable Trust (collectively referred to herein as the "Revocable Trust").  Complaint, ¶ 11.

Stuart passed away on May 13, 2010. Under the terms of the Revocable Trust, the Revocable Trust was divided into two sub-trusts called the Bypass Trust and the Survivor's Trust. Marion served as sole Trustee of both sub-trusts until her death.  Complaint, ¶ 12.

On May 19, 2011, Marion, amended and restated the Survivor's Trust, which she further amended on November 28, 2012 (Amendment #1), January 10,

---

[1] Notably, Plaintiff signed the Settlement Agreement on October 15, 2021.  His complaint was filed October 8, 2024, just seven days shy of three years.

[2] Plaintiff's share would not go to him outright, but consistent with his parents' original estate plan, would be distributed to a separate trust administered by a corporate trustee "according to Article V, paragraph F, page 21 et seq. of the Hillman Family Revocable Trust as amended and restated on November 30, 2005."   Request for Judicial Notice, Exhibit A, paragraph 4.

Motion to Dismiss
v

2017 (Amendment #2), November 4, 2019 (Third Amendment and Restatement), and March 13, 2020 (Fourth Amendment), all of which are collectively referred to as the "Survivor's Trust". Complaint, ¶ 13.

Article Five, Paragraph 3a, of the Survivor's Trust contains a formula clause that effectively limits Ron's share of the Revocable Trust to $1M. It further reduces Ron's share by the amounts kept by Marion as a list of expenses she paid to or for Ron's benefit during her lifetime. Request for Judicial Notice ("RJN"), Exhibit 1, Recital D.

Per the Survivor's Trust, Lori and Julie became the co-trustees upon Marion's passing in April 2021. Complaint, ¶ 13.

Following Marion's passing, Plaintiff disputed the amendments made by Marion to the Survivor's Trust, and stated his desire and intent to contest all of them. Complaint, ¶ 14.

On or about October 15, 2021, the Plaintiff entered into a confidential release and settlement agreement (the "Settlement Agreement") with Lori and Julie as co-trustees of The Hillman Family Revocable Trust Agreement—the successor to the Survivor's Trust – and all sub-trusts created thereunder. Complaint, ¶ 15.

Although Plaintiff alleges that "Under the terms of the Agreement, Plaintiff was to receive 33% of the estate" (Complaint, ¶ 15), the Settlement Agreement actually says that the "Trustees [Lori and Julie] will allocate **$2,123,192.00** to Ron's share of the trust, computed as one-third of the net trust assets, as valued on the attached spreadsheet (*Exhibit A*),[3] to be offset per the terms of the trust, by amounts *Ron* received from his parents during their lifetimes, as documented in

---

[3] Exhibit A to RJN Exhibit 1 consists of two types of Trust assets, cash and LLC interests.

*Exhibit B*,[4] and further offset by the monthly stipends *Ron* has already received, as documented in Paragraph 3 below.  This result is a net distribution of **$1,760,335.48** (the "Distribution Amount") to *Ron's* Trust." RJN, Exhibit 1, paragraph 2 (bold and italics in original).

      Although Plaintiff alleges the Settlement Agreement was "based upon an accounting of the assets in the Trust provided by Defendants" (Complaint, ¶ 15), the Settlement Agreement actually says that "Each Party waives a formal accounting by the Trustees." RJN, Exhibit 1, paragraph 6.

      Although Plaintiff alleges that Defendants misrepresented "that the figures reflected in the Attachment to the Agreement were in fact the entirety of the entire estate" (Complaint, ¶ 15), the Settlement Agreement actually says that "*Ron* acknowledges that the Trustees have received two unsolicited offers, one at $2.5M and a second at $2.775M, to purchase one of the Trust assets (the Alabaster LLC property in Alabama), from a neutral third-party buyer located by *Ron*; and that the higher of the two offers is being used to value said asset."[5] RJN, Exhibit 1, paragraph G.

      Although Plaintiff has filed this legal proceeding against Lori and Julie, in exchange for the Distribution Amount, he had agreed "NOT to pursue any court action of any kind against the Trustees or against *Julie* or *Lori* individually, and further agrees to release the Trustees and *Julie* and *Lori* individually from any and all liability, as set forth herein." RJN, Exhibit 1, paragraph 5 (capitalization and italics in original).

---

[4] Exhibit B to RJN Exhibit 1 spans multiple pages chronicling and cataloging the money Plaintiff was given over the years, more than $360,000 total.

[5] The Settlement Agreement also states, in paragraph 1, that each of the recitals contained in the Settlement Agreement is "true and correct." RJN, Exhibit 1.

Although Plaintiff alleges in his Complaint that Defendants misrepresented facts upon which he reasonably relied, the Settlement Agreement states that "No Party has relied upon any statement, representation, warranty, promise, or condition (whether oral or written), except as expressly set forth herein. Any statement, representation, warranty, promise, or condition (whether oral or written), not specifically incorporated herein is not binding, and is of no force or effect." RJN, Exhibit 1, paragraph 10. Along these same lines, the Settlement Agreement also states that "Each Party received (or had the opportunity to receive) independent legal advice from his or her own attorney about the contents of this Agreement before signing it." RJN, Exhibit 1, paragraph 9.

Finally, the Settlement Agreement Plaintiff signed includes broad waivers and releases, including as stated in paragraph 7: "The Parties release one another, and Ron releases Julie and Lori, both individually and as Trustees, their accountants, attorneys, financial advisors, or other agents, of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which the Party may now have, own, or hold at any time before or after execution of this Agreement."[6]

## III.   ARGUMENT

### A. Applicable Law for Motions to Dismiss.

The court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8 & 12(b)(6). Rule 8 demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state

---

[6] The Settlement Agreement also contains a Civil Code § 1542 waiver. RJN, Exhibit 1, paragraph 8.

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Allegations that are merely consistent with liability do not suffice. *Id*.

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Id*. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id*. (citation omitted). Determining whether allegations amount to a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 669.

### B. Traditional Contractual Interpretation Principles Apply.

Settlement agreements are governed by the same rules of construction applicable to other contracts. *Property California SCJLW One Corp. v. Leamy,* 25 Cal.App.5th 1155, 1162 (2018), *citing Winet v. Price,* 4 Cal.App.4th 1159, 1165 (1992). With respect to this issue, the Ninth Circuit has said: "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus* 899 F.2d 753, 759 (9th Cir. 1989); *Miller v. Fairchild Indus.,* 797 F.2d 727, 733 (9th Cir.1986) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.") "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.]" *Parsons v. Bristol Development Co.,* 62 Cal.2d 861, 865 (1965).

Releases are not exempt from these rules of construction. "Contract principles apply when interpreting a release, and 'normally the meaning of contract language, including a release, is a legal question.' [Citation.]" *M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.,* 202 Cal.App.4th 1509, 1530 (2012), citing *Benedek v. PLC Santa Monica,* 104 Cal.App.4th 1351, 1356 (2002).

The meaning of a contractual release is a ***legal question***, not a factual question, and the meaning is resolved by application of contract principles. *County of San Joaquin v. Workers' Comp. Appeals Bd.,* 117 Cal.App.4th 1180, 1184 (2004), citing *Solis v. Kirkwood Resort Co.,* 94 Cal.App.4th 354, 360 (2001).

### C. <u>The Entire Complaint is Barred Based on Plaintiff's Written Release.</u>

By its plain language and meaning, the Complaint alleges that Plaintiff was deceived because he was misinformed as to the Trust's assets, and this is why he claims to have agreed to receive a net distribution of approximately $1.7 million (even though the amendments to the Trust had substantially reduced Plaintiff's interest entirely). Plaintiff's allegations, however, are squarely contradicted by the language of the October 2021 Settlement Agreement[7] in several respects.

---

[7] Plaintiff did not attach the October 2021 Settlement Agreement to his Complaint, and says it will be "filed with the Court under seal separately," but the Settlement Agreement is expressly referenced in the Complaint. (*See* Complaint, ¶ 15.) As such, it is incorporated by reference and may be properly considered by the Court on a motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (when a "plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading"), overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). This "prevent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents that are determinative of their claims." *S.M. ex rel. Allen v. W. Contra Costa Cty. Unified Sch. Dist. Fin. Corp.*, 2009 WL 1033826, at *3 (N.D. Cal. Apr. 16, 2009) (holding that it was proper to consider settlement agreement submitted by defendants in evaluation of motion to dismiss).

"California has a strong policy in favor of enforcing settlement agreements." *Lesnik v. Eisenmann SE,* 374 F.Supp.3d 923, 954 (N.D. Cal. 2019). Where parties intentionally enter into a broad release being aware of and appreciating its effect, the release serves the crucial purpose of giving settling parties' repose, and will be enforced. *See Winet v. Price,* 4 Cal.App.4th 1159, 1173 (1992) (noting that litigants "are in great need of the availability of iron-clad and enforceable general releases" and thus where a broad release is "complete, explicit and non-ambiguous" it will be upheld under the "beneficial principle of contract law: that general releases *can* be so constructed as to be completely enforceable") (emphasis original). California law requires that "the release of 'all claims and causes of action' [] be given a comprehensive scope." *Schroeder v. Envoy Air, Inc.*, 2016 WL 11520388, at *6 (C.D. Cal. Sept. 27, 2016). This means general releases are "not to be shorn of their efficiency by any narrow, technical, and close construction," and if the parties meant to "leave some things open and unsettled, their intent so to do should be made manifest." *Villacres v. ABM Indus. Inc.,* 189 Cal.App.4th 562, 589 (2010).

The release language is contained in paragraph 7 of the subject Settlement Agreement and provides: "The Parties release one another, and *Ron* releases *Julie* and *Lori*, both individually and as Trustees, their accountants, attorneys, financial advisors, or other agents, of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which the Party may now have, own, or hold at any time before or after execution of this Agreement." (RJN, Exhibit 1 (italics

in original).[8]  This language is clear, comprehensive, and fatal to Plaintiff's Complaint.

Along similar lines, Plaintiff covenanted not to sue.  "Whether a covenant not to sue divests the trial court of jurisdiction depends on what is covered by the covenant." *Entropic Communications, LLC v. Comcast Corporation*, 702 F.Supp.3d 954, 963 (C.D. Cal. 2023), quoting *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).  The covenant at issue here is broad, drawing within its scope all of the claims Plaintiff now seeks to pursue: "In exchange [for his share of the Trust], Ron agrees NOT to pursue any court action of any kind against the Trustees or against Julie or Lori individually, and further agrees to release the Trustees and Julie and Lori individually from any and all liability, as set forth herein."  RJN, Exhibit 1, paragraph 5.  Plaintiff gave up the right to pursue any court action of any kind, and so he cannot now maintain this action.[9]

### D. **Plaintiff Cannot Establish Reliance – Reasonable or Otherwise.**

Reliance is a required element of Plaintiff's first cause of action. *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995).  Reasonable reliance can be decided as a matter of law, and is judged by an objective standard that does not require the Court to assume a plaintiff has the "minimum knowledge of a hypothetical, reasonable man." *Id.* at 1239-1240; *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.,* 660 F.Supp.2d 1163, 1189 (C.D. Cal. 2009).  Indeed, "[w]hether a party's reliance was justified may be decided as a matter of

---

[8] The Complaint, which is verified, alleges in pertinent part that each of the named defendants were the "agents…of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency…." Complaint, ¶ 8.  Thus, according to the plain language of the verified Complaint, Alan is Lori and Julie's "agent."
[9] This argument may be considered under Rule 12(b)(2).

law if reasonable minds can come to only one conclusion based on the facts." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239 (1995). Plaintiff cannot establish this required element.

Because he must, Plaintiff alleges he relied on "Defendants' misrepresentations and concealments" about the Trust's assets. Plaintiff's alleged reliance, however, is simply not possible in light of the Settlement Agreement's representations and terms, including:

1. Plaintiff's acknowledgement that the trustees received two unsolicited offers, one at $2.5M and as second at $2.775M, to purchase one of the Trust's assets (the Alabaster LLC property in Alabama), from a neutral third-party buyer located by Plaintiff, and that the higher of the two offers is being used to value that asset. RJN, Exhibit 1, Recital G.[10]
2. Plaintiff's agreement to not pursue any court action of any kind against Julie or Lori, either individually or as trustees. RJN, Exhibit 1, ¶ 5.
3. Plaintiff's waiver of a formal accounting by the trustees (Julie and Lori). *Id*. at ¶ 6.
4. Plaintiff's all-encompassing release of Julie and Lori, individually and as trustees. *Id*. at ¶ 7.
5. Plaintiff's all-encompassing release of Julie and Lori's accountants, attorneys, financial advisors, or other agents. *Id*. at ¶ 7.
6. A California Civil Code § 1542 waiver, releasing unknown claims. *Id*. at ¶ 8.
7. Plaintiff's acknowledgment of receipt of independent legal advice from counsel of his choosing before executing the Settlement Agreement. *Id*. at ¶ 9.

---

[10] The Settlement Agreement states in paragraph 1 that the recitals are true and correct.

8. Plaintiff's disclaimer of reliance on any statement, representation, warranty, promise, or condition (whether oral or written), except as expressly set forth herein. *Id*. at ¶ 10.

9. Plaintiff's acknowledgement that any statement, representation, warranty, promise, or condition (whether oral or written) not specifically incorporated in the Settlement Agreement as being not binding and of no force or effect. *Id*. at ¶ 10.

This combination of representations, acknowledgements, agreements, waivers, and releases thoroughly and completely precludes any possible reliance (whether actual or reasonable) by Plaintiff on any alleged misstatements regarding the Trust's assets. Reasonable minds can come to only one conclusion here – there was no reliance by Plaintiff. *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239 (1995); s*ee Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471, 478 (9th Cir. 1994) (concluding that plaintiff had not shown reasonable reliance where plaintiff represented in an agreement that it had "independently and without reliance upon any representations of [the lead bank] ... relied upon [its] own credit analysis and judgment" because this "implie[d] that, to the extent that it did rely on [the lead bank's conflicting representations], [plaintiff's] reliance was not justifiable," and holding that "the contract could and did control whether such reliance would be 'justifiable' for purposes of a fraud claim").

E. **The Breach of Covenant of Good Faith Claim Fails.**

"In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, *6 (N.D. Cal. Feb. 27, 2008); *see also Griffin v. Green Tree Servicing, LLC,* 166 F. Supp. 3d 1030, 1048 (C.D. Cal. 2015) (granting a motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing because plaintiff did not identify which contract

gave rise to the implied duty or any contractual rights she had that were frustrated by the alleged breach); *Engage BDR v. GoDaddy,* 2021 WL 8820555, at *3 (C.D. Cal. 2021) (same). The Complaint fails to identify the specific contractual obligation as required and so this claim must fail.

### F. Plaintiff's Fraud Claim Fails.

To avoid dismissal under Rule 9(b), Plaintiff must specify "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *See Edwards v. Marin Park. Inc.,* 356 F.3d 1058, 1065-66 (9th Cir. 2004); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1123 (9th Cir. 2009). "Any averments which do not meet [the Rule 9(b)] standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Sanford v. MemberWorks, Inc.,* 625 F.3d 550, 558 (9th Cir. 2010) (citations omitted).

More than this, Rule 9(b) requires that the role and involvement of each Defendant in the scheme be alleged with particularity. *See In re Sagent Tech., Inc., Derivative Litig.,* 278 F.Supp.2d 1079, 1094-95 (N.D. Cal. 2003) (granting motion to dismiss because allegations did "not indicate which individual defendant or defendants were responsible for which alleged wrongful act"); *Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (dismissing complaint that did not specify the "particular activities" of each defendant). Plaintiff's Complaint misses the mark by a wide margin.

The complete universe of Plaintiff's allegations with regard to Defendant's alleged misrepresentations are set forth here in full:

- "Defendants' misrepresentations and failures to disclose material facts about the status of the assets in The Hillman Family Revocable Trust Agreement (the "Trust")." Complaint, ¶ 1.
- "Defendants, including Alan, represented to Ron that the assets of the Trust were limited to a certain schedule of properties and the values for

even those disclosed assets were understated to falsely represent to Ron that the trust was financially strained." *Id*. at ¶ 18.

- "Alan personally met with Ron at Alan's office to convince him to settle his interest based on false representations and concealed assets." *Id*. at ¶ 18.

Notably and wholly absent from Plaintiff's allegations are any of the most fundamental requirements – the date, the time, the place, or the specific content of the claimed false representations. When were these representations allegedly made, on what date? How were they made (orally or in writing)? Where were they made ("Alan's office" located where)? When was the meeting at "Alan's office"? What was actually said? All of these facts are missing and, as such, the Complaint comes nowhere close to satisfying the fraud pleading standard.

### G. Unjust Enrichment is Not a Recognized Cause of Action.

Plaintiff's cause of action for unjust enrichment fails because it is not a recognized cause of action in California. "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' " *Tarvin v. Olly Public Benefit Corporation,* 2024 WL 4866271, at *7 (C.D. Cal., Nov. 12, 2024), *citing Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted); *R.C. v. Walgreen Co.,* 733 F.Supp.3d 876, 899 (C.D. Cal. 2024) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." (citation omitted); *In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F.Supp.2d 1145, 1194 (C.D. Cal.2010) ("Courts consistently have held that unjust enrichment is not a proper cause of action under California law."); *McVicar v. Goodman Global, Inc.,* 1 F.Supp.3d 1044, 1059 (C.D. Cal. 2014) (same). This cause of action cannot be stated and should be dismissed without leave to amend.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request the Court grant their motion to dismiss without leave to amend.

DATED: March 3, 2025                LAW OFFICES OF DAVID N. LAKE

By: _____
DAVID N. LAKE

Attorneys for Defendants